**Cecil GAMMONS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 11, 1957.

John W. Coomes, New Castle, for appellant.

Jo M. Ferguson, Atty. Gen., David B. Sebree, Asst. Atty. Gen., for appellee.

WADDILL, Commissioner.

Cecil Gammons has appealed from a judgment sentencing him to life imprisonment in connection with the death of Mrs. Nancy Thompson. We must reverse the judgment because the evidence is wholly insufficient to support the conviction of the crime of murder, and also for the reason that incompetent and prejudicial testimony was introduced during the trial over Gammons' objections.

On the night of September 21, 1954, at approximately ten o'clock, a building located about four miles south of Bedford on highway No. 42 was destroyed by fire. The dead body of Mrs. Nancy Thompson, an elderly lady who lived there and operated a small grocery store in the front part of the building, was found lying upon a badly burned set of bedsprings in the remains of a bedroom.

The appellant, Cecil Gammons, was indicted for the alleged murder of Mrs. Thompson. The first count of the indictment charged, in substance, that Cecil Gammons and Glenford Williamson entered into a conspiracy with each other to go to the grocery of Mrs. Nancy Thompson and to take from her by force or by intimidation certain personal property; that while they were acting pursuant thereto, they went to the store of Mrs. Thompson and while engaged in taking her personal property, one or both of them caused the death of Mrs. Thompson by means unknown to the grand jury. The second count charged, in effect, that Gammons and Williamson conspired one with the other to go to the store of Mrs. Thompson for the purpose of robbing her and that pursuant thereto, they did rob Mrs. Thompson and set fire to her property which acts resulted in her death.

When the case against Gammons came to trial, the Commonwealth established that Gammons and Williamson were friends and had been seen together by the sheriff of Trimble County between 4:00 and 5:00 p. m. on the day of Mrs. Thompson's death. The sheriff testified that after he had received information that two men were loitering behind a church which was located about one-fourth of a mile from Mrs. Thompson's store, he immediately went there and found Gammons and Williamson, who were well-known to him, sitting behind the church. The sheriff stated that he advised these men about the report he had received, and suggested they find another place to do their loafing. The sheriff said they left the church grounds and that was the last time he saw Gammons, but that he later saw Williamson at an Inn at approximately nine o'clock, and at Williamson's request, drove him to the home of Curt Hackney. The sheriff stated that Williamson did not seem to be drinking, but Williamson had a strong odor of coal oil about his person. The sheriff said when he reached his home

he was informed of the fire at Mrs. Thompson's place, and when he arrived there, Mrs. Thompson's home had been completely destroyed by fire and her body had been removed from the debris.

The sheriff further testified that on the following day the dead body of Williamson was found in a coal house located at the rear of the house occupied by Junior Lakes. Williamson's death had been caused by a bullet which had been apparently fired from a .32 calibre pistol that was found lying near his body. Three witnesses testified that the pistol belonged to Mrs. Nancy Thompson, and that they had recently seen it in her possession. Several officers who examined Williamson's body stated upon the trial that they detected the odor of coal oil on Williamson's body.

The sheriff further testified that on the following day he and several other officers searched the premises belonging to Gammons' relatives and found Gammons concealed in a barn. When Gammons was searched, he had three dollars and forty-two cents in small change in his pockets, and also had a rifle, three pints of whiskey, and a small amount of food. Gammons was arrested and charged with the murder of Mrs. Thompson.

The Commonwealth introduced Mrs. Flossie Corley as a witness and she was permitted to testify, over the appellant's objections, that while she was in Mrs. Thompson's store at about 4:00 p. m. on the afternoon of September 21, 1954, Mrs. Thompson told her that Cecil Gammons and Beck Williamson "made her give them $20 and said if she called the sheriff that they would come and kill her that night." The jury was also permitted to consider the testimony of Mrs. Rosemary Strange, who testified, over appellant's objections, that on the night of September 21, 1954, while she was visiting in the home of Junior Lakes, at about 11:00 p. m. she and the Lakes returned to the Lakes home from a picture show. She stated that they found Glenford Williamson, who was Mrs. Lakes' brother, lying across a bed. She stated she noticed the odor of coal oil about him and asked him what was troubling him. She said that Williamson then told her "this old woman had been burned, and he didn't know whether she was dead or not." She stated that she then asked him where and how it happened, he replied, "it was a store * * * the lamp had been kicked over, the kerosene lamp * * * they had ran." She further testified that Williamson said he was going to kill himself; that "he would rather be dead than have to go back to the pen; that he wanted to get his share of the money * * * that Cecil had his share." The witness then stated that Williamson left the house and about fifteen minutes later she heard a shot and the next morning she saw the dead body of Williamson lying near the coal shed. Some other witnesses testified in behalf of the Commonwealth but their testimony merely corroborated the evidence given by the sheriff of Trimble County.

 The appellant was convicted of the crime of murder. To sustain the conviction under the indictment in this case, it was necessary for the Commonwealth to establish that the appellant and Glenford Williamson entered into a conspiracy to rob Mrs. Thompson, and that in the execution of their common design, the appellant or Williamson caused the death of Mrs. Thompson. Roberson's Kentucky Criminal Law, Second Edition, Section 227. The evidence not only failed to establish that a conspiracy was formed between the appellant and Williamson, but the evidence was also insufficient to prove the elements of the crime of murder. A conspiracy cannot be established by mere suspicion. Nor do the relationships and associations between the parties which are natural and reasonable according to their habits and modes of life constitute evidence of a conspiracy.

All that was shown by the Commonwealth's proof on the question of whether a conspiracy was formed between the alleged conspirators was that they were friends and had been seen together on the day that Mrs. Thompson met her death.

Since there is nothing to establish the conspiracy alleged in the indictment, the court should have directed a verdict of acquittal.

The testimony of Mrs. Flossie Corley about what Mrs. Thompson had told her was hearsay and was incompetent and highly prejudicial to the substantial rights of the accused. We have also decided that the testimony of Mrs. Rosemary Strange, concerning what Williamson told her, was not competent evidence against the appellant because the prosecution had utterly failed to prove a conspiracy. Roberson's Kentucky Criminal Law, Second Edition, Section 229.

In the event of another trial the court will not permit the testimony we have held incompetent to be heard by the jury, and the court will direct a verdict of acquittal in the event the evidence offered upon a retrial is substantially the same as appearing in this record. All other questions raised on this appeal are specifically reserved.

The judgment is reversed, with directions to grant appellant a new trial in accordance with this opinion.